## BAGLEY v. EATON et al.

Where the verdict of the jury is clearly against the evidence, a new trial will be awarded.

APPEAL from the District Court of the Fourth Judicial District, County of San Francisco.

This is an action brought by the appellant against the respondents, as administrator and administratrix of the estate of G. C. McMickle, deceased, on three promissory notes made and delivered by McMickle, in his lifetime, to Bagley & Sinton, and by them assigned to Bagley.

The notes all date the twenty-third of March, 1851, and all bear interest at five per cent. per month, from date.

Due presentation of the claims, properly verified, to the administrator, is alleged, and their rejection; and suit was brought within three months thereafter.

To this complaint the defendant answered, and interpose five separate defences.

1. A general denial.

2. The Statute of Limitations, four years.

3. Payment and satisfaction.

4. That on May first, 1850, Bagley & Sinton made an agreement with the deceased for the purchase, by the latter, of the former, of a lot in San Francisco, for fourteen thousand dollars, on on which he paid, up to the twenty-second March, 1851, eight thousand four hundred and twenty dollars; that on that day the parties settled, and entered into an agreement, in writing, setting forth the notes sued on as the balance of the purchase-money due; but that the liability of McMickle was limited, and that it was provided, if the notes were not paid, that McMickle was not to be holden, but that the lot became forfeited to Bagley & Sinton, and they were to accept it in full discharge of the notes; that the notes were not paid, and Bagley & Sinton did accept the lot, and sold it to other persons, and so discharged the notes.

5. That the notes were without consideration, and void.

On the trial, the plaintiff offered his own affidavit, and that of R. H. Sinton, which were read to the Court, to show a destruction of the notes sued on, for the purpose of laying the foundation for the introduction of secondary evidence to the jury, of the notes.

After the reading of which, the Court permitted the secondary evidence to be read to the jury, which was the following instrument in writing, executed in duplicate, one part of which was produced by the plaintiff, and the other by the defendants, from

the papers of their intestate, and the signatures to which were all admitted by the defendants' counsel to be genuine. It was signed by McMickle, and by Bagley & Sinton, and acknowledged by each before a notary public, and dates twenty-second March, 1851.

The beginning is a penal bond, that Bagley & Sinton become bound for twelve thousand dollars to McMickle. The agreement then sets forth that in May, 1850, Bagley & Sinton sold to McMickle, for *fourteen thousand dollars*, a lot in San Francisco, describing it. That McM. had, at different times, paid up eight thousand four hundred and twenty dollars, leaving a balance due Bagley & Sinton of five thousand five hundred and eighty dollars, which, together with one thousand dollars interest, made an aggregate due Bagley & Sinton of six thousand five hundred and eighty dollars, at that date, (twenty-second March, 1851,) and that McMickle had made his three promissory notes to Bagley & Sinton of that date, for that amount: First note for two thousand dollars, at thirty days after date; second, for two thousand dollars, sixty days after date; third, for two thousand five hundred and eighty dollars, ninety days after date, all bearing interest at five per cent. per month, from date. That if McMickle should pay to Bagley & Sinton, or their assigns, said notes at maturity, then Bagley & Sinton were to execute to him a deed for the lot; but if McMickle should make default, in any one or all of said notes, he was to forfeit all right and title in the lot, and Bagley & Sinton were authorized to make such disposition, etc., as they might see fit.

The assignments of the notes and claim by Sinton to Bagley were proven, and also a presentation of the claim, duly verified, to the administrator, Eaton, and his rejection of it, on the fifth day of January, 1855.

Plaintiff introduced R. H. Sinton, who testified that he drew the agreement above described, and the notes therein referred to; that the notes therein described were executed by McMickle to Bagley & Sinton, and delivered to them. They were never paid, or in any manner satisfied, except as to the amount of three thousand dollars, obtained by a sale of the property to Jane Mooney, June 4, 1851; this sale was on account of McMickle, and in part payment of these notes. He was informed and counseled about the sale, before it was consummated, and knew the terms, and agreed to them, and was satisfied. No other payment was ever made on these notes.

About August or September, 1852, McMickle went to the office of B. & S., and requested them to deliver his notes to him, stating that they were negotiable, and might get into the market, in the hands of others. The notes were handed to him, and he tore them up. He wanted the bond or agreement, also, but Bagley & Sinton refused to give it to him, because it was the

Bagley v. Eaton.

only evidence remaining of the debt, and told him so. It was distinctly understood, at the time, by McMickle, Bagley, and Sinton, that the claim of the latter on the notes was not abandoned, but only that they were destroyed, to prevent their negotiation into the hands of other parties. For this reason, the bond was not given up. Sinton dunned McMickle for the payment of these notes many times afterwards, and he frequently promised to pay when able. S. asked for payment, at least a dozen times after the destruction of the notes; the last time, three or four months before his death, and got the same answer—that he would pay when he got his affairs all right.

He always evinced a willingness to pay when able. S. had great confidence in him. During these times, he represented himself as embarrassed, but never denied the debt. S. knew, from report, of his embarrassment, but not of his own knowledge, and had, before the destruction of these notes, been very indulgent to him.

Real estate, being always very vacillating in San Francisco, B. & S. were offered, in 1849 or 1850, by Col. Bryant, for this lot, $22,500. In 1850, real estate fell. The sale to Mooney was the then market value. In 1853, it was worth from ten to twelve thousand dollars, and would have sold for it; now, it would not bring as much. That Sinton sold and assigned his interest to Bagley, for a nominal sum, ten dollars, fourth April, 1855; then thought they had committed a fatal mistake in letting the notes go out of their hands; that he thought the $3,000 from Mooney was credited on the notes; at any rate, McMickle got credit for it.

McMickle never had a deed for the lot, but had control of it. Before the execution of the notes, there was a written memorandum between the parties, setting forth the price, terms, etc.

That Sinton did not transfer his interest to Bagley, because he thought the debt was not honestly due, but because he feared the expenses of litigation, lawyer's fees, etc. and thought it of doubtful collection, after McMickle's death.

Plaintiff here closed his case, and defendants' counsel offered and read in evidence a deed of conveyance from Hiram Pearson to McMickle, dated January 15, 1853, for certain water-lots in San Francisco, which deed was acknowledged and recorded in the recorder's office of the county of San Francisco. Lib. 20, p. 107.

This property was entirely distinct and different from the property sold by Bagley & Sinton to McMickle.

The defendants next introduced Dr. Parker, who testified that he had been agent for McMickle and knew about the lot described in the deed from Pearson. The property was worth twenty-five thousand dollars, and in possession of McMickle by

himself or agents, from date of his deed till his death, in September, 1854.

The lots were capped and piled, with two or three small houses, and tenants paying rent of ninety to one hundred and fifty dollars per month. McMickle, a gambler by profession, had not much money in 1852; was reported insolvent during and up to 1852–'3, and after the deed from Pearson; got this deed from Pierson on a compromise. He claimed one-half of the Peter Smith interests of Pearson, but it was settled by this deed.

The defendants then introduced the inventory and appraisement of the estate of McMickle, from the files of the Probate Court.

It was admitted that the administrator had duly given notice to creditors to present their claims against said estate, and that the time expired in 1855, and that no other claims had been presented.

The Court charged the jury that the execution of these notes not being disputed, the sole question for their consideration was, whether or not the notes had ever been discharged.

The jury found a verdict for the defendants.

The Court overruled the motion for a new trial which defendants afterwards made, and entered final judgment on the verdict.

This appeal was taken from the judgment, and also from the order of the Court overruling the motion for a new trial.

*Hoge & Wilson* for Appellants.

The verdict against the evidence. Practice Act, §193; Payne v. Jacobs, 1 Cal. R., 39; Agintal v. Crowell, 1 ib., 191; Hart v. Hosack, 1 Caines, 25; Jackson v. Sternberg, 1 ib., 162; Newton v. Pope, 1 Cowen, 110; Dolson v. Arnold, 10 How. Prac., 528.

Errors of law, occurring at the trial. Admitting improper evidence to the jury; *i. e.*, the deed from Pearson to McMickle. Farmers' and Manufacturers' Bank v. Whinfield, 24 Wend., 419; 19 Wend., 232; 6 Hill, 292; 1 Cal., 92.

Erroneous instructions to the jury. 1 Cal. R., 353.

Ruling of Court at the time of overruling the nonsuit, requiring further testimony to go to the jury. Evidence as to loss and destruction of notes were addressed to the Court, and not for jury. 9 Wheaton, 483; 1 Peters, 597; 15 Pick., 368.

*Glassell & Leigh* for Respondents.

The evidence before the jury was conflicting upon the issue of fact before them, and the Court below properly refused to disturb their verdict, by granting a new trial. See Johnson v. Pendleton, 1 Cal. R., 132; 3 Cal. R., 55 and 413; 1 Cal., p. 180; 2 Cal. R., 423.

The evidence on the one side, for the plaintiff, is the testimony of a witness, one of the payees in the notes sued upon, and the late copartner of the plaintiff.

His evidence is substantially that the said notes have not been paid or discharged, to the best of witness's knowledge and belief.

But witness is but one of two copartners, either of whom may have received payment for the notes, or otherwise discharged them, and his evidence is scarcely *prima facie* proof, in the absence of the notes, that they have not been paid, or otherwise discharged.

On the other side is the evidence of the defendants, consisting of a chain of circumstances, raising a presumption of payment and discharge, little short of a conclusion.

The circumstance, that, shortly after the sale of the lot for which the notes were given as balance of the purchase-money, under an indenture or agreement between the maker of the notes and the payees, (which indenture was of so equivocal a character that the Court below considered that the said election of forfeiture, and sale accordingly, operated a discharge of the said notes,) the maker, McMickle, as if acting upon the understanding that the notes were discharged, went to the holders, Messrs. Bagley & Sinton, and requested them to deliver them up to him to be destroyed.

Upon such request, Messrs. Bagley & Sinton, real estate brokers and business men, having no particular relations of blood or friendship for McMickle, acting also, as if upon an understanding that the notes were discharged, delivered them up to the said maker, and saw them destroyed without objection.

This *prima facie* act of discharge, was done in the absence of any competent witness, and without the scratch of a pen to show any other intention between the parties than that the notes were discharged, and thereby canceled.

After these notes were destroyed, with all evidence of their existing force, the said holders urge no claim upon them for several years, notwithstanding the maker had property and was responsible for his just debts. Nor is the claim ever prosecuted until it comes up against the estate of a dead man, and is then supported alone by the testimony of one of the payees in the notes, who made himself competent to testify in the matter by selling his interest in the notes.

Upon this circumstantial proof that the notes have been discharged, the jury found the fact accordingly. 2 Gr. Ev., §§ 527, 528; 1 Ph. Ed., p. 436, et seq.

If the plaintiff had really made out his case, as he contends, the introduction of additional proof, on his part, could not have subtracted from what he already had.

But the ruling of the Court, that other testimony was requi-

site to sustain plaintiff's suit, was a correct conclusion of law. There was no evidence before the jury to rebut the presumption of payment arising from the non-production of the notes.

The naked facts before the jury were that such notes as those sued on had been in existence, but were now not forthcoming, and therefore presumed to be paid.   2 Greenleaf, § 527.

Notwithstanding that a predicate had been laid before the judge, for the introduction of evidence of the contents of the notes.   See appellant's authorities on this point, particularly 15 Pick., 375.

The deed of Pearson to McMickle was properly allowed in evidence.

This deed was part of the evidence showing that McMickle was ostensibly responsible for his just debts, during the time that the claim in controversy was allowed to remain unsettled and unprosecuted, and was supported by the evidence of Dr. Parker, that McMickle continued in possession of the land described in the deed from the date of deed up to his death.

Its relevancy is obvious, as tending to strengthen the presumption arising from the long- delay in prosecuting such a claim, and also in rebuttal of plaintiff's testimony that McM. was insolvent during that time.   2 Greenleaf Ev., § 528.

MURRAY, C. J., delivered the opinion of the Court—BURNETT, J., concurring.

The Court below erred in overruling the motion for a new trial.   The evidence did not warrant the jury in finding for the defendants; and we are bound to believe, from a full examination of the testimony, that the verdict was the result of mistake, prejudice, or corruption.

The Court also erred in admitting in evidence the deed from Pearsons to McMickle, as it was entirely irrelevant, and calculated to withdraw the mind of the jury from the true issue involved in the case.

This is the second time this case has been before us, and we trust that it will be correctly disposed of when it is again tried, so that the parties will not be put to the trouble and expense of coming again to this Court.

Judgment reversed, and cause remanded.